and under advisement. Thank you, Your Honors. Be well. Are you both unmuted? I am, Judge. Okay, and let me call the case, which is United States v. Joshua Eaden. And it is appeal 20-27-63. And Mr. O'Connor, 15 minutes with five minutes rebuttal. Good morning. May it please the court. Your Honors, the district court during voir dire in this case discussed at length with the veneer and therefore with the eventual jurors that a prior jury, a grand jury, had returned to discuss the process by which this prior jury, a grand jury, had returned an indictment against Mr. Eaden. The district court explained that this was a grand jury. It was comprised of Mr. O'Connor. Mr. O'Connor, I want to ask you a question, but it has to do with a different subject. And I just want to make sure that we have time to cover this subject. And that's waiver. And let me explain to you on the restitution and the forfeiture issues. Let me let me explain to you why I'm asking the question why these issues weren't waived. It seems to me that after the trial, when the district court was sentencing your client, the focus seemed to be on the amount of loss, as it often is in these cases, because that's what drives the sentencing guidelines and what ultimately results in a sentence of imprisonment. Restitution sometimes seems to be the tail and sometimes the tip of the tail of the dog, because oftentimes defendants don't have the means to pay restitution anyway, so that's not the focus. Here it seems to me like your client was winning some of the amount of loss arguments in the district court, thereby reducing the sentencing guidelines. When it came time to award restitution or for the district judge to decide restitution, your client agreed that the restitution amount should track the amounts of loss, and that was the end of the matter. This seems to me to be a little bit of a bait and switch on the district judge to come in now and say, well, actually, the district judge should have confirmed all that, should have done his own calculations and determined precisely what the amount of restitution was after your client affirmatively agreed. And maybe I have the facts wrong, and you should correct me if I do, but after your client affirmatively agreed that those amounts that corresponded with the amounts of loss should in fact be the restitution that was ordered. Now, and by the way, do not, as far as I'm concerned, Judge Roldner and Judge Hamilton may disagree. You don't have to address for me the issues that the government has conceded. Thank you, Your Honor. Let me begin by saying that the vignette, I believe Your Honor is referring to, where the court having decided that it was not going to include tires that were associated with bone fill in the loss calculation, then turned to restitution. And defense counsel's statement that it was, well, I might be mangling it, but it's probably academic at this point, but the restitution should be for the same amount, was not an agreement, I would say to those affirmative agreement that yes, this is correct. What he was doing was reasserting his argument that you should, because the government said, okay, we lost on the loss amount with these tires, but we want them in restitution. We want those tires at $108,000 in restitution, and he was reasserting the argument with respect to those tires, he was reasserting that argument as to why that shouldn't be included in restitution as well. That's, I think, how his remarks should be understood. It's probably academic at this point. And that's, you know, in other words, I don't need to restate this. Your Honor has already said I'm not going to consider this for loss, so for the same reasons, don't include it. I want to say as well that I don't think there was a bait and switch here. I think there was a forfeiture. Yeah, I understand. I may have overstated that. I may have overstated that. By the time we get to restitution, the government's central contention is, look, you need a strategic choice, a knowing and intentional choice for a waiver. The government says, look, the strategic choice here is Mr. Eden focused his firepower on the loss amount and gave up the restitution to succeed there. Now, there are a number of reasons we set forth in our brief why that's not the case. But the most important, perhaps, is this. By the time you get to restitution, the judges already said we're not going to include those industrial tires in loss. The defendant and the probation office are correct as to the amount of loss. There is no reason at that point not to point out that these figures are clearly wrong. Did the judge announce his sentence of imprisonment before he determined the amount of restitution? In other words, did he say, I'm going to sentence you to 40 months in prison or 46 months, whatever, Mr. Eden got, and then say, now let's address the issue of restitution? Usually they don't do that. He didn't do that, Judge, but he did resolve the loss amount. It's in the transcript. He clearly resolved the loss amount, which, as Your Honor knows, is the driver of, in many ways, the sentencing level before he turned to restitution. That was done. And so, with great respect to the government and its counsel, there's no reason at that point not to point out that these amounts are clearly wrong. Before he said... Mr. O'Connor, let me push back against that concept a little bit. And this gets to one of my major concerns in this appeal. The financial terms of a sentence, fine, restitution, and forfeiture, in one level, at one level, they're basically all fungible as dollars. As I understand it, this sentence included no fine. Is that correct? That is correct, sir. Okay. So, given the government's confession of error on a couple of points, we're going to have to send this back to Judge Young for something. The question is, should we send the entire sentencing package back? Should we send back all financial terms for a reassessment of that entire package? Or should we just say, just fix what the government has agreed to regarding the restitution and forfeiture and don't touch anything else? Why should we make a choice in one of those? Okay, well, Judge Hamilton, as an initial matter, what I would say is that in sending it back, I think the court should hold the $189,000 or so that was paid by SIT to Gibson County Coal cannot be awarded here as restitution. Because that was money... I don't know what it means to them. Correct, but I understood you to say to return it on that issue as well, and my point is there's no... Oh, I see. I'm speaking as a former district judge. Yes. In this kind of a case, I would have said substantial restitution and forfeiture obligations I'm proposing here, I don't see any point in a fine. But if the Court of Appeals tells me that the restitution I awarded is going to be cut by 80 or 90%, I might want to reconsider that issue about a fine. Should we allow that option to Judge Young? I don't think so, because I think Judge Young said, so I recall the record, that he didn't impose a fine because Mr. Eaton couldn't pay one, and that was clear. So, I don't see any indication that he would fine Mr. Eaton. The other point that I would make, Your Honor, is that the actual restitution here is quite, quite reduced when one goes through the numbers. I mean, the $47,288 is clearly inflated with all kinds of things of which this man was never charged or convicted, including the $108,000 in tires the judge said he wouldn't rely on. Similarly, my guess is that the expert will bring it even below $26,000. And so, I don't think the district court is going to look at that. I mean, that's the actual restitution and say, well, I have to fine this guy, too. Shouldn't we let Judge Young make that determination? Well, my position would be I would not reopen the issue of a fine because of the record. I think the judge said, I'm not going to fine this guy because he doesn't have any money. I mean, he doesn't really have anything. And so, that would be my answer. After imposing those higher restitution amounts, right? I'm sorry, Judge? That was his view after imposing more than $200,000 in restitution and forfeiture, correct? Well, correct, but he didn't say I'm hitting you with a ton of restitution. I believe what he said was you don't have any money. That's my recollection of the transcript. Okay, thank you. I'm going to, yes, Judge? Maybe just argue what you wish to argue. The first point is I'm going to answer whatever question Your Honor has. Well, that's very gracious. A bit foolish, perhaps, but very gracious. Erase that. It was very gracious. You argue that the errors affected the outcome of the trial because the government's evidence of intent to defraud was weak. But didn't he essentially admit to Weaver and Piper that he stole over $200,000 from the coal mine? And isn't that evidence, pretty strong evidence of an intent to defraud? I don't think so, Judge. And the reason is that I think a jury would look at this differently, especially in light of the other evidence. And the reason is what he says, I believe it's Mr. Piper or Mr. Weaver says, well, Josh, that means you stole from the coal mine. And he says, I guess I did. He's a guy who started as a tire technician, and he's intimidated by these men. I would argue it if I were the trial lawyer that essentially it's as if he's being led. I know that's probably not their intent, but it's not really an admission. One of the most striking things about this case is that this dichotomy between what's being billed for foam fill to the mine and what's being put out in foam fill by the warehouse is that this great disconnect, but nobody in this company seems to say anything to this man. And in any business, there are controls, and there was testimony about this. And I think there's a sense that these, I believe that he had to get approval to build things. That's some degree in my mind of corroboration for his story that, you know what, I thought I was supposed to do it this way. And then you add in the fact that the foam fill is not billed by the amount, it's billed on a standard amount per tire that they agree on. Your Honor's question is very well taken, but for that reason, I don't think it's the compelling admission that the government argued it was. If the panel has no other questions at this point, I would reserve my remaining time for rebuttal. Thank you very much. Okay, Mr. Wood. Your Honor, may it please the court, Bob Wood on behalf of the government. With the court's permission, I'll start quickly on the waiver and remand issues that occupied some of the earlier argument. I think there's a little bit of nuance missing on this waiver argument. Mr. Eden argues that he was reasserting his tire argument and incorporating the loss argument into the restitution argument. But what he did was to say the $108,000 that I just won on in loss, please don't include that in restitution. And the judge didn't. He won that too. What's missing is anything about the formulaic bonus amounts. And, you know, it's not differential equations, but profit share percentages that change up and down as profit increases and profit share increases. And then there are different levels for the percentages that you apply to those percentages. It's kind of a complex math problem. And my opposing counsel, who I have to say I just had such a wonderful conversation with before this argument, he has done some of the effort on the math. But even with that good faith effort, I think it's not right. I'm not sure, but it wasn't presented to the judge the first time around. I don't think that's what it would end up as. There is the $26,500 figure, but the refinement and the questions that were posed to Brian Callahan from BKD was not sufficient to give any kind of comfort to this court to then just say, yes, that's the number. If there has to be a number, maybe that's the number. But I don't think it's right because it doesn't really apply the bonus formula correctly. And also on the waiver point really quickly, I'd like to say that Mr. Eden showed up with two strategies, not just as Judge Kirsch rightly said, the strategy to lower loss amount, which he succeeded on. But he had this strategy to say that he was disabled, that he had gone blind, and that he could not do anything other than listen to his son talk. And that proved and he fooled his lawyer. His lawyer didn't present that lie to the court. His lawyer is a great lawyer. He fooled his lawyer and his lawyer came prepared to present that sympathetic strategy, and it flopped because he lied to the court. He was golfing that whole time. So he had that strategy and the loss strategy, and it makes sense if you're going to focus on sympathy and lowering the guideline range that you might, and also winning I think it was four or five categories of restitution already, the ones that he put in the PSR, that you might not then also argue the restitution argument for a complex formula. That amounted to some share of $47,000 and finally on that point, the Bridgestone milestone program operates on point redemption. So it's not just that every time he successfully claims a milestone program reward, he gets points that he gets something in return, he had to hit benchmarks. So 500 points might earn a $50 Visa gift card and if over 75%, and that may be right or may not be right, but it's what's in the record of the claims were false, it's hard to imagine that any of those point totals weren't affected by some level of fraud. And at the very least, the government's position would be that any point redemption that had baked into it fraudulent claims, false claims would be subject to restitution because he wouldn't have gotten the points, but for the false claims. And then on remand, the government's position is that a very narrow remand is appropriate. The point here, if I may, is in part out of a concern about opening up the whole sentencing package and also out of respect for the district court, I take Judge Hamilton's point directly that the district court really should be given the opportunity to supply the sentence that the district court wants. But at the same time, this was a tough sentencing for the district court to go through, to be lied to that way and the way the court talked about how he would view Mr. Eden in the future. I just think it's better for all involved and it's a reasonable application of restitution law and the government's position on the errors that did occur here to just strike a balance at a very narrow remand encompassing only those amounts and direct that they be subtracted. You want us to just dictate what the sentence, how it should be amended. The government's position is that that is that the remainder of the sentence is not likely to change because it is not as though Mr. Eden is a wealthy person and certainly now that he's in prison that even less so. And the judge considered his dishonesty and the nature and circumstances of his offense and gave him a pretty substantial sentence for him like this. So, the government's position on these facts is that a directive saying subtract these amounts is a fair result. It's fair from our perspective because some of those amounts are just obviously wrong. The parties and the court had subrogation in mind and it didn't apply. You think we're better mathematicians than judge. No, no, Your Honor. I think we made a mistake too, of course. You know, I always try to and I mean I'll take any opportunity to head to southern Indiana. My wife's name is a two and we like to take kids camping on the way back to Evansville so sure why not. But I think Mr. Schellenbarger would appreciate some math help, although he's pretty good at it himself. I have to say he's he's supplied some effective record based math to the point being. Oh, sorry. Mr. Wood, let me ask you a question regarding a potential remand here. If we were to remand on the issues that the government conceded with respect to restitution, why should we not remand? It seems to me that there were at least at least the government is conceding in some respects that there may have been some errors committed in the computation of the restitution, even with respect to the restitution amounts that the government is not conceding on appeal. There may have been some errors, at least some mathematical errors. I think the question as to whether it was plain error or whether it was a waived is an open question, but it seems like there may have been some errors. If we were going to remand on the restitution for the calculation of restitution, particularly the issues that the government conceded, why wouldn't we remand on the entire restitution package? And then if we were to do that, why wouldn't we remand also for the judge to consider, as Judge Hamilton asked in a question earlier, the entire financial package? Maybe Judge Young wouldn't find this individual. I certainly understand what you're saying. I've been through hundreds of sentencings, and I understand what you're saying that he may not. But why not give him the option, especially when, by the way, this whole restitution, we're kind of in a mess here. It's not really Judge Young's fault that we're in this mess, okay? I mean I wouldn't lay any of the blame there. And that is, Your Honor, respectfully, that's part of the reasoning animating our position is that Judge Young didn't make these mistakes on his own. The mistakes were basically fed to him, and he just accepted them. And to ask him to go through it all again when there seems to be a straightforward answer, that's what I'm trying to avoid. If that's not possible, taking the restitution piece only, I had an appeal a couple of years ago, the Hamza Dridi appeal, where just restitution, and I don't think the fines, that piece of the package was sent back on remand and was relatively simple for the judge to handle. The parties submitted more thorough, better arguments on restitution, and the judge was able to, and actually agreed ultimately after providing calculations to a restitution amount. And I could see that happening if this were restitution only. I could see an agreed result on remand. If fines were brought into it, obviously the government can agree, can stipulate to no fine, but then you're at the same time robbing Judge Young of the opportunity to fine, and it doesn't really help with Your Honor's concern, which is a good one. What exactly would the fine be? Do you know as you sit there? Off the top of my head, I do not know, Your Honor. So on those points, unless there are other questions on those points, I would say quickly on the other arguments that as to the Bridgestone testimony from Don Anderson, Mr. question about simple clerical errors, although it produced perhaps an oblique reference to intent, did not demand a legal conclusion, the intent element of the statute was not in play. There were some, I attended a criminal division-wide meeting last Thursday and asked people, this is not a confession of error, just an advisability issue. Please, please don't take shortcuts in asking your questions with reference to terms in the statute. So we, you know, there are better ways to get to the result there, but at the same time, this court said in lock everything that at least the government believes needs to have been said for a case like this one on that question. And the one, oh, the final issue, the government's position remains that not only was, were Judge Young's statements to the jury, to the veneer legally correct, there's no question, at least there hasn't been an accusation, that they were legally incorrect, but that they weren't prejudicial in the sense, in the senses offered in our brief, namely that there were other counts of which he was acquitted and the comments would have applied naturally to those counts. And separately, the evidence was strong. It wasn't just his confession to Piper and Weaver, but also he said some pretty inculpatory things to the police officer, the Indiana State Police. There was a lot of evidence about his conduct, his dumping all the papers. It's not an unguilty looking thing to do. And the Piper good faith defense that he made was really quite narrow if you look at the testimony on that issue, and it was fairly well rebutted by other testimony from people like Todd Fields and in the government's closing argument. The government's position is this was a case with overwhelming evidence of intent and other laws. Mr. Wood, can I ask you one question just to be, so I'm very clear on the government's position with respect to restitution. I take it the government's first position with respect to restitution is that we should fix the two errors that the government conceded and then affirm without sending it back to the district court at all. Is that right? That is how we read the court's Oliver opinions as a quick and easy way to resolve restitution. If that's not a faithful application of that, then that function may not be available and it may be a requirement. Let's say it is available. Okay, just for the purpose of my question, because the second part of my question is most important. If we decide to send it back to the district court for recalculation of restitution, is it the government's position that we should send it back to the district court for restitution start all over again with respect to restitution? Or is it the government's position that we should only send it back to the district court to address the issues that the government conceded and the district court is without authority to address the issues with respect to restitution that the government hasn't conceded? The government's position is that the district court would possess that authority unless the court very expressly directed that it did not in terms of the… But what should we do? What does the government want us to do? Because this comes – this weighs into the plain error analysis. Sure. So our first and foremost argument is largely waiver, but then there are these errors, right? So with respect to those, the resolution that comes to mind – and it's a different context, but it was now eight years ago maybe this court sent back the Durham prosecution and the remand order essentially said something like resent – sentence the defendant without this, this, and this in the mix. So it would essentially be recalculate restitution without this, this, and this in the mix. And don't – no other aspect of sentencing would be open. Now, as the judges have – you know, it hadn't occurred to me this notion of whether it's unfair to rob the district court of the ability to impose a fine. Our position is not ultimately all that clear on which is the just result – full financial package or full restitution package. In either sense, it is to send back to the district court, clearly demarcate this – the SIT repayment, the subrogation cannot be included. And as for the part of the bonus plan on forfeiture and restitution, these amounts cannot be included. Please recalculate in light of that. Not here's the number, but this can't be – That's my question. We can recalculate. The question is with respect to the contested issues of restitution, forget the issues that the government conceded. With the issues that are still in contention, if we send it back to the district court on the conceded issues, is it the government's position that the district court should get to recalculate the restitution with respect to the disputed issues? Or is it the government's position that we should instruct the district court not to touch those restitution issues? I think there's two restitution issues and one forfeiture issue. Sure. So the government's position is first and foremost those are not available because of waiver. However, in the hypothetical or in the version of events that Your Honor presupposes, you have already deemed that a plain error. So if it is a plain error – because if it's not waiver, then plain error review applies. So you have deemed those other amounts for which we say there's no real answer yet. You've deemed it a plain error, and in that event, the question is should the court exercise its discretion to remand on those issues? And if you already have a restitution remand occurring, then I'd be hard-pressed to say that this court wouldn't exercise its discretion in that context. But that is a – if I am understanding Your Honor's question correctly, that is a question contingent on the finding of a plain error with respect to those amounts. And the government's position is – sorry, I've run out of time – that they have proved the right amounts, and so we don't know if it was a plain error because they haven't arrived at any correct amounts on those. Thank you. If I could just add a word. I just want to note appreciation for the government's candor in this case, Mr. Wood, in dealing with these issues. Mr. O'Connor? Yes, Judge. Briefly, two points. I don't – there was no waiver here. I don't think anyone understood the problems with the restitution and forfeiture amount. It was a restitution, but it was a forfeiture. Mr. Callahan, right before he says $26,500, says it's easy to figure out the actual amount due to foam overfilling. And we just don't know if that $26,500 includes industrial tires, which the district court said you shouldn't. I suspect it does, so it's probably a lot less. And this is a lot of money for anybody but for Mr. Eden. So – and I think it's equally easy to figure out the Firestone issue. I went through that exhibit. The second thing I want to say, though, is I want to talk just very briefly about this discussion in Vladimir about the grand jury returning a finding that this man is probably connected to criminal activity. But isn't that obvious? I mean, he's sitting in court, and I thought that Judge Young did a very admiral job, actually, of trying to sort of – he made a comment that maybe he wouldn't have made in every case. But he did – at least I thought, why didn't he correct – it seemed to me that he went, like, overboard in trying to correct that and extract the jury, the difference between a grand jury and a petite jury. I mean, everybody knows that when someone is in courtroom for trial that they've actually been charged with a crime, that somebody found something with respect – you know, it's not just some mystery as to how they got there. I would commend to the court this thought, and that is, in your instruction in the charge, it says the indictment does not even raise a suspicion of guilt, which puts the defendant on the same plane as anyone else in the courtroom. It is a baseline of zero for the United States government. That's right. Here, the fundamental architecture was changed. The jury was told this guy has been found probably to be connected with criminal activity, and that meant that the cloak of innocence here, the presumption, is not he's like anybody else. It's can the government carry the ball the rest of the way from probably connected to beyond a reasonable doubt. I know my time is up. I don't think anything other than a mistrial could have cured this. It is a fundamental error. Mr. Keating didn't ask for one. Right. That is true, Your Honor, but this to me, I mean, the court's pattern instructions make clear this is an error, and it's plain. The government doesn't try to argue. I think never tries to square it with that. The question is, how bad is it? I don't even think you have to look to the evidence, although I would say the evidence makes clear it should be reversed. These people are starting with the concept in mind, not at zero, not at not even a reasonable suspicion, but he's probably connected to criminal activity. That's where they're starting from. Nothing corrected that. The judge didn't do that. So I think this case should be reversed in its entirety. Okay. So, Mr. O'Connor, you were appointed. And you have the deepest thanks of the court for the fine job that you have done for your client. And, Mr. Wood, I want to second, and I know that Judge Kirsch does as well, Judge Hamilton's remarks to you. Indeed, when I see lawyers of your capabilities, the two of you, and the way you come into court, well, the way you have interacted with each other, it really makes us proud to be lawyers. So, thank you. Thank you, Your Honors. Thank you very much. I feel as if I want to just end now. Well, I feel like I just want to go crawl in a hole. But anyway, thank you so much. Thank you. All right. The court's going to take a 10-minute break. So.